**AFFIDAVIT**

Affiant Paul D. Stroney Jr., having been duly sworn according to law, deposes and states:

Affiant Paul D. Stroney Jr., is an employee of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), within the meaning of Section 878(a) of Title 21, United States Code, that is, an officer who is empowered by law to conduct investigations, make arrests, execute search warrants, and seize property in connection with violations of Title 18, United States Code and Title 21, United States Code. Affiant is a Special Agent (SA) for the DEA, and has been so employed since February 2012. Affiant has been assigned to the Cleveland District Office in Cleveland, Ohio, since February 2012.

**TRAINING AND EXPERIENCE**

1. Affiant received specialized training at the DEA Training Academy in Quantico, Virginia, regarding the identification of narcotic controlled substances and the operation of drug trafficking organizations. Affiant has also been involved in the investigation of numerous individuals and organizations involved in the manufacturing, distribution, and use of controlled substances. As a Special Agent, Affiant has also worked in an undercover capacity for the purpose of

1

purchasing controlled substances, and has participated in the preparation of affidavits in support of numerous search and arrest warrants for violations of federal drug laws contained in Title 21, United States Code, as well as in the execution of the same. In addition, Affiant has on numerous occasions, made seizures of contraband, conveyances, currency, drug paraphernalia, and firearms possessed or used in relation to violations of Title 21, United States Code, Section 841. Affiant has successfully conducted numerous investigations that have resulted in the arrest of numerous drug traffickers and the seizure of significant quantities of drugs and drug-related proceeds. Affiant has further conducted surveillance operations of drug traffickers, and has interviewed numerous persons personally involved in drug trafficking. Affiant has also supervised numerous confidential sources during controlled purchases of narcotics. Through this training and experience, Affiant has become familiar with, and has gained a thorough understanding of, the methods, manner, and means used by individuals engaged in the unlawful manufacturing, trafficking, and use of controlled substances.

**BASIS OF INFORMATION**

2. Except as otherwise noted, the information set forth in this Affidavit has been provided to your Affiant by agents and/or officers of the Drug Enforcement Administration (DEA) or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom Affiant has spoken or whose report Affiant has read and reviewed. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS), the State of Ohio or the National Crime Information Center (NCIC), the Ohio Law Enforcement Gateway (OHLEG) computer system, and other known public database computer systems, by members herein described.

3. Since the Affidavit is being submitted for the limited purpose of securing an arrest warrant, your Affiant has not included each and every fact known to her concerning this investigation. Your Affiant has set forth only the facts that he believes are necessary to establish the foundation for the issuance of the arrest warrant.

**FACTS AND CIRCUMSTANCES REGARDING PROBABLE CAUSE**

4. On June 11, 2019, at approximately 11:59 p.m., Canadian County (Oklahoma) Sheriff's Office Deputy Dallas Lang observed a white Ford F-150 traveling eastbound on Interstate 40. Dep. Lang further observed the vehicle to be traveling over the 70 mile per hour speed limit by traveling 76 miles per hour. The vehicle also made a lane change without signaling prior to 100 feet.

5. Deputy Lang activated his emergency lights and initiated a traffic stop near Czech Hall Rd and Interstate 40. Upon initial contact with the vehicle, Deputy Lang observed a man in the back seat and two men up front. The driver was identified as Jose Miranda-Gonzalez by his Sonora (Mexico) license. The front seat passenger was identified as Stevan RUIZ by his State of Arizona identification card and the rear passenger was identified as Ramon Vasquez by his State of Arizona identification card. Jose Miranda-Gonzalez appeared to be shaking from his hands while searching for his license and while he was searching through the truck for the rental agreement in place of the insurance. While Deputy Lang was waiting, he also observed Ramon Vasquez in the back seat laying back, close his eyes and exhale heavily. Jose Miranda-Gonzalez stated he did not have the rental agreement and Deputy Lang was advised that Stevan RUIZ's mother had rented the vehicle and she

4

was not present. Deputy Lang then asked Jose Miranda-Gonzalez to exit the vehicle and sit in his patrol vehicle. While speaking with Jose Miranda-Gonzalez, Deputy Lang advised him that he was not getting a citation and only a warning for the traffic violation. Deputy Lang provided all the parties' information to dispatch and spoke with Jose while awaiting returns.

6. Jose Miranda-Gonzalez stated they were going to Ohio from Tucson, Arizona to buy parts for a Jeep Rubicon. When Deputy Lang asked what kind of parts, Jose Miranda-Gonzalez was unable to tell Deputy Lang. Jose Miranda-Gonzalez further stated that he had looked up the places that they were going to pick up the parts when they arrive and he did not know yet. Jose Miranda-Gonzalez showed several visible signs of stress during the time Deputy Lang was speaking with him about the trip and the vehicle. When Deputy Lang asked who the other occupants in the vehicle were, Jose Miranda-Gonzalez stated they were friends and one of them lived with him.

7. Due to Jose Miranda-Gonzalez's behavior, story and other inconsistencies, Deputy Lang went back to the vehicle and spoke with Stevan RUIZ. Ruiz advised that they were going to Oklahoma to be dropped off with his aunt because of a family member being diagnosed with a sickness. He then advised he didn't know where Jose Miranda-Gonzalez and Ramon Vasquez were going afterwards.

5

8. Deputy Lang then asked Ramon Vasquez to roll down his window after he noticed Ramon Vasquez appeared to be trying to sleep but was cracking his eyelids to look at Deputy Lang while he was speaking to Stevan RUIZ. Deputy Lang asked Ramon Vasquez where he and Jose Miranda-Gonzalez were going and Vasquez stated that they were going to Tulsa, OK to go shopping.

9. Deputy Lang then returned to his patrol vehicle and spoke with Jose Miranda-Gonzalez. Deputy Lang advised Jose Miranda-Gonzalez that he was not receiving a citation and provided him with all of his documents. As Jose Miranda-Gonzalez grabbed the door handle to exit, he appeared very excited and anxious to leave. Deputy Lang asked Jose Miranda-Gonzalez if he could speak with him more and he hesitated with a blank look on his face. Deputy Lang then asked again and he agreed. Deputy Lang asked Jose Miranda-Gonzalez if there were any guns in the truck and he stated no. Deputy Lang asked if there was any illegal drugs in the truck and listed several types of drugs. Jose Miranda-Gonzalez answered "no" but would not maintain eye contact with Deputy Lang. During this time, Deputy Lang could visibly see Jose Miranda-Gonzalez's carotid artery pulsating heavily. Deputy Lang then asked Jose Miranda-Gonzalez if Deputy Lang could search the truck and he did not answer clearly. Deputy Lang asked again and Jose stated something that Deputy Lang believed to be "you said I could go". Deputy Lang asked

6

again and advised he needed to say Yes or No. Jose then refused consent to search the vehicle.

10. At this time, Deputy Lang asked additional units to arrive and all parties were removed from the vehicle. Deputy Lang had Jose Miranda-Gonzalez step away from the vehicle so Deputy Lang could deploy his canine partner. Jose Miranda-Gonzalez appeared weak in the knees, dropped his eyes and appeared defeated. Deputy Lang asked Jose Miranda-Gonzalez again if he had drugs in the car and he began mumbling. All parties were detained and Deputy Lang deployed his state certified drug detector dog for a free air sniff. K9 Eddy positively alerted to the presence of the door of controlled substances emanating from the vehicle.

11. During a probable cause search of the vehicle, 39 bundles of narcotics were located in 3 bags and in the tailgate of the truck. The total weight of the bundles was approximately eighty-one pounds. A check of one bag had a clear, crystal substance that Deputy Lang believed to be methamphetamine. On June 12, 2019, investigators conducted a chemical field test on one of the packages. The field test yielded positive results for the properties of methamphetamine.

12. During the aforementioned traffic stop, all three vehicle occupants provided varying statements to law enforcement regarding the purpose of their travel. Specifically, Miranda-

7

Gonzalez stated they were traveling to purchase automobile parts in Ohio. RUIZ stated he was going to be dropped off to visit a relative in Oklahoma. Vasquez stated they were going shopping in Tulsa, Oklahoma. Affiant is aware, based on training and experience, that drug couriers traveling together often provide inconsistent statements to law enforcement about the purpose of their trip. This is because the true purpose of their trip is to transport and deliver narcotics and/or narcotics proceeds (which most couriers do not readily admit to law enforcement) and many couriers do not sufficiently rehearse "cover" stories to explain their travels to law enforcement. Based on the inconsistent stories provided by Miranda-Gonzalez, RUIZ, and Vasquez, Affiant believes all three persons knew that they were transporting methamphetamine and lied to law enforcement in an effort to prevent law enforcement from finding the drugs. The following sections detail additional factors demonstrating each party had criminal knowledge that they were trafficking narcotics.

13. On June 12, 2019, law enforcement searched MIRANDA-Gonzalez's cellular telephone and its associated WhatsApp Messenger Service account. On the same date, Affiant reviewed the WhatsApp Messenger Service account on MIRANDA-Gonzalez's cellular telephone. Affiant found that on the prior date (June 11, 2019) at approximately 4:30 and 4:31 p.m., a WhatsApp

8

account associated with a Mexican telephone number sent two messages to MIRANDA-GONZALEZ, in Spanish, which asked "what's up" and "how's it going?" MIRANDA-GONZALEZ replied with a message which stated, in Spanish, that "he would arrive in Amarillo, Texas in three hours." At approximately 4:33 p.m., the WhatsApp account associated with the Mexican telephone number sent the following message, in Spanish, to MIRANDA-GONZALEZ: "Todo bien." This message roughly translates to "Everything good?" MIRANDA-GONZALEZ replied, in Spanish, "Ay la yevamos." This message roughly translates to "It's going." Approximately one minute later, the WhatsApp account associated with the Mexican telephone number replied with, "Muy bie. Es todo." This message roughly translates to, "Very good. It's everything." MIRANDA-GONZALEZ replied, "Si dios quiere," which roughly means "God willing." The WhatsApp account associated with the Mexican telephone number then replied with two thumbs-up icons and "Con toda la fe," which roughly means "With all the faith."

14. Affiant is aware, based on training and experience, that drug couriers are often directed by "handlers" who periodically check in on the status of the couriers to ensure that the couriers haven't been stopped and arrested by law enforcement. Based on the short nature of the messages between MIRANDA-GONZALEZ and the WhatsApp account associated with the

9

Mexican telephone number, Affiant believes the unknown user of the Mexican telephone number was serving as MIRANDA-GONZALEZ's "handler."

15. Through the investigation, law enforcement learned that RAMON VASQUEZ was aware that methamphetamine was being transported in the vehicle. A search of VASQUEZ's phone revealed a Facebook Messenger account associated with the telephone, in which investigators found an exchange of messages. In the course of the messages, VASQUEZ stated, "U know en q trabajo… i got to move some stuff.." VASQUEZ also stated, "No im going to do this manana.. I also have to go to ohio to pick something up." Affiant believes that in this series of messages, when VASQUEZ stated, "i got to move some stuff.." he meant that he had to transport drugs. Affiant believes that these messages demonstrate VASQUEZ also knew that he was involved in transporting drugs and/or drug proceeds.

16. On June 12, 2019 at approximately 4:40 p.m., DEA Special Agent Robin L. Melodick read Miranda warnings to RUIZ in the presence of TFO Anthony Libel. RUIZ indicated that he was not an innocent party simply getting a ride to Oklahoma City to visit family as he had original indicated. RUIZ acknowledged that he was aware that drugs were being transported in the vehicle. Stevan RUIZ was informed that he was under arrest and subsequently transported to Canadian County Detention Center

where he would be booked in on state charges.

## PROBABLE CAUSE TO SUPPORT CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE IN THE NORTHERN DISTRICT OF OHIO

17. Through the investigation, law enforcement learned that the eighty-one (81) pounds of methamphetamine were destined for distribution in Akron, Ohio. Akron, Ohio is located within the Northern District of Ohio.

## CONCLUSION

18. Special Agent Paul Stroney, Drug Enforcement Administration, being duly sworn according to law, deposes, and states that the facts stated in the foregoing Affidavit are true and correct to the best of his knowledge, information, and belief.

19. Based on your Affiant's training, experience and the facts set forth in this Affidavit, your Affiant believes that there is probable cause to believe that Stevan RUIZ did knowingly and intentionally conspire with Jose Luis Miranda-Gonzalez and Ramon Vasquez and others unknown to possess with the intent to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21, U.S.C., Sections 846 and 841(a)(1).

11

_____

                                      Paul D. Stroney Jr.
                                            Special Agent
                          Drug Enforcement Administration

Subscribed and sworn to before me on this 25th day of June 2019.

_____
Kathleen B. Burke
United States Magistrate Judge
Northern District of Ohio, Eastern Division

12